UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

FILED
11/25/2025
U.S. DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
Kristine L. Seufert, Clerk

AARON SINGER, )
PLAINTIFF, )
V. ) No. 1:25-cv-00870-JPH-MKK
INDIANAPOLIS METROPOLITAN POLICE )
DEPARTMENT (IMPD), et al., )
DEFENDANTS. )

# PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS

## INTRODUCTION

The Constitution does not permit government actors to insulate themselves from judicial scrutiny by labeling their misconduct as discretionary or by hiding behind municipal status. As the Supreme Court held in *Marbury v. Madison*, it is "emphatically the province and duty of the Judicial Department to say what the law is." 5 U.S. (1 Cranch) 137, 177 (1803). When a plaintiff alleges that state actors, acting under color of law, violated clearly established constitutional rights, the judiciary's obligation to enforce those guarantees becomes paramount—not optional.

Defendants' Motion to Dismiss asks the Court to accept a version of events that would, in effect, nullify constitutional oversight. They ask the Court to assume that coordinated actions by police officers, municipal agents, and related public entities—actions resulting in unlawful seizure, physical intrusion, retaliatory arrest, denial of medical accommodations, and enterprise-level misconduct—are either non-actionable or categorically immune. They further attempt to collapse individual misconduct into an amorphous "municipal action" to evade liability, even

where Plaintiff alleges personal, intentional, and conspiratorial acts by specific officers and agents.

The law does not allow such an escape hatch. A Rule 12(b)(6) motion cannot succeed where a complaint plausibly alleges (1) individual constitutional violations, (2) a municipal policy or custom under *Monell*, and (3) concerted action among officers and agents operating as an enterprise for purposes of civil RICO liability. Plaintiff's Amended Complaint does all three with detailed factual specificity: dates, actors, conduct, resulting injuries, and the policy-level mechanisms enabling the violations.

Defendants effectively ask this Court to disregard the factual allegations, rewrite the pleading standard, and accept a legal theory in which no amount of coordinated public misconduct could ever be actionable. But under *Marbury*, under §1983, under *Monell*, and under the Federal Rules, this Court—not the Defendants—determines what the law is, and whether Plaintiff's pleadings meet governing standards. They do.

The Motion to Dismiss should therefore be denied in its entirety.

## LEGAL STANDARD

### A. Rule 12(b)(6): Plausibility, Not Proof

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the complaint, not the strength of the evidence. At this stage, the Court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in the plaintiff's favor. Dismissal is appropriate only when the complaint fails to state a claim that is plausible on its face. The plausibility standard

"does not impose a probability requirement," but merely asks whether the complaint contains enough factual matter to allow the Court to reasonably infer liability. Conclusory statements are disregarded, but factual allegations—dates, conduct, actors, and consequences—must be credited.

**B. §1983: Individual Conduct, Municipal Liability, and Policy-Level Causation**

To survive dismissal under 42 U.S.C. §1983, a plaintiff need only allege:

1. the deprivation of a right secured by the Constitution or federal law;
2. by a person acting under color of state law.

Where municipal liability is asserted under *Monell*, the plaintiff must plausibly allege a **policy, custom, practice, or failure to train or supervise** that was the moving force behind the violation. At the pleading stage, a plaintiff is not required to prove the policy's full contours or produce discovery-grade evidence; allegations supported by factual context, patterns of conduct, or specific examples are sufficient. A complaint survives dismissal so long as it identifies (1) the specific policy or custom, and (2) the causal relationship between that policy/custom and the constitutional harm.

**C. Personal Involvement and Coordinated Misconduct**

Individual officers and public agents are liable where they personally participated in, encouraged, directed, or knowingly acquiesced in the unconstitutional conduct. Coordinated or sequential actions by multiple actors may be considered jointly where they form part of a unified

course of misconduct. At this stage, the Court assesses whether the pleaded facts plausibly describe such coordinated action—not whether Defendants agree with the characterization.

**D. Civil RICO: Enterprise, Predicate Acts, and Pattern Allegations**

A civil RICO claim requires only a plausible showing of:

1. conduct,
2. of an enterprise,
3. through a pattern,
4. of racketeering activity, (a term of art defined in section 1961 to denote violations)
5. causing injury to plaintiff's business or property.

At the pleading stage, courts accept well-supported allegations showing the existence and structure of an enterprise formed by officers, agents, or interlinked public actors operating through coordinated misconduct, rather than conclusory labels. A municipal corporation itself may not serve as a RICO "person," but a distinct enterprise can arise from the customs, practices, and policies of the Monell defendant, where those policies enable or authorize coordinated acts such as retaliatory arrest, unlawful detention, deprivation of rights under color of law, manipulation of official processes, or obstruction of federal judicial functions. Plaintiff does not sue IMPD as a municipal entity under RICO; instead, he alleges that the IMPD Enterprise, created and sustained by unconstitutional policies and customs of the Monell "person," constitutes the distinct entity through which racketeering activity was conducted. This distinction squarely defeats Defendants' municipal-immunity argument.

**E. Liberal Construction for Pro Se Civil Rights Pleadings**

Although Plaintiff demonstrates advanced legal fluency, his pro se status entitles his civil rights pleadings to liberal construction. Courts construe pro se §1983 filings in the light most favorable to the litigant to ensure that meritorious constitutional claims are not dismissed due to technical imperfections. This reinforces—not replaces—the plausibility standard.

## ARGUMENT

**1. Plaintiff's Amended Complaint Satisfies Federal Pleading Standards, Especially Given His Pro Se Status**

- Defendants argue that Mr. Singer has failed to comply with the applicable pleading standards and therefore his complaint should be dismissed. But because Mr. Singer is proceeding *pro se*, his complaint must be *liberally construed*. (See *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)). Under Rule 12(b)(6), the Court must accept all well-pleaded facts as true and draw reasonable inferences in the plaintiff's favor; dismissal is only appropriate if there is no possible set of facts that would entitle him to relief.
- Defendants allege that they have difficulty responding because Mr. Singer has not clearly identified overlapping interactions, especially with the named officers in 2025. However, Mr. Singer's amended complaint outlines specific dates, officer conduct, and institutional context in a clear, organized fashion, not in the disorganized, cross-referenced style condemned in *U.S. ex rel. Garst v. Lockheed-Martin Corp.* Indeed, *Garst* involved filings so convoluted that even seasoned counsel could not follow them — by contrast, Mr.

Singer's complaint is coherent, grounded in factual specificity, and tailored to show plausibility.

- Moreover, defendants' attempt to analogize this case to *Garst* mischaracterizes the burden: this is not about an unreasonably voluminous or labyrinthine complaint, but about identifying a pattern, a custom, and an institutional failure. The record and amended complaint support those inferences.

**2. IMPD Is a Proper Defendant — Courts in This District Have Treated It as Such**

Defendants contend that IMPD may not be sued, but precedent in the Southern District of Indiana demonstrates otherwise: IMPD has appeared as a defendant in multiple § 1983 actions (e.g., *Mitchum v. City of Indianapolis*, 1:2019 cv 02277; *Brown v. IMPD*, 1:2018 cv 03157).

- Even where some claims against IMPD have been dismissed, courts have recognized the department's role in policy or Monell liability contexts. (See, e.g., *Johnson v. City of Indianapolis*, 1:2021 cv 00907, where the court discussed IMPD's Use-of-Force policy in resolving the case).

- Under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), a municipality (or its relevant entity) can be sued as a "person" under § 1983 for unconstitutional policies, customs, or failure to train. Mr. Singer's complaint alleges institutional failures, demonstrating plausible Monell claims tied to IMPD.

- Further, the structural relationship between IMPD and the City of Indianapolis does not shield it from liability: IMPD's organizational function and command structure make it properly subject to suit, especially where custom or policy is alleged.

### A. Federal Claims

#### 1. Plaintiff Has Adequately Pleaded First Amendment Retaliation Under § 1983

Defendants argue that Plaintiff failed to allege facts supporting the inference that his protected First Amendment activity was a motivating factor in the retaliatory conduct. This mischaracterizes both the complaint and the applicable legal standard.

To state a claim for First Amendment retaliation, a plaintiff must allege that:

(1) he engaged in constitutionally protected activity,

(2) he suffered an adverse action that would deter a person of ordinary firmness from continuing that activity, and

(3) the protected activity was at least a motivating factor in the adverse action.

*Perez v. Fenoglio*, 792 F.3d 768, 783 (7th Cir. 2015).

Here, Plaintiff alleges that he went to IndyGo headquarters to file a formal complaint — activity explicitly protected by the First Amendment. Plaintiff further alleges that IndyGo security assaulted, detained, and unlawfully seized him and his belongings because of that complaint, and that IMPD officers, after being called to the scene, endorsed and expanded that retaliation by unlawfully arresting him, conducting warrantless searches, inflicting physical violence, and subjecting him to an invasive sexual battery while in custody.

Plaintiff further alleges that the retaliatory conduct did not end with the initial incident. Instead, after Plaintiff filed a federal civil rights complaint, IMPD personnel engaged in

continued harassment, including uninvited presence at his residence in February 2025 and further retaliatory arrest, detention, and criminal charges in June 2025.

Taken together, these allegations easily satisfy the *Perez* standard. Any reasonable person, upon learning that attempting to file a complaint will result in assault, kidnapping, confinement, sexual battery, targeted harassment, and subsequent criminal prosecution, would be deterred from exercising his First Amendment rights. Plaintiff has therefore adequately plead First Amendment retaliation.

**2. Plaintiff Has Stated Valid Fourteenth Amendment Claims**

**i. Substantive Due Process**

Defendants assert that Plaintiff's Fourteenth Amendment substantive due process claims are duplicative of his Fourth Amendment claims and therefore barred. This is incorrect. The Fourteenth Amendment protects against executive abuse of power that is arbitrary, conscience-shocking, or without any legitimate governmental purpose. *County of Sacramento v. Lewis*, 523 U.S. 833, 846–47 (1998).

Plaintiff alleges multiple forms of arbitrary government conduct that are not merely "excessive force" or "unlawful seizure," including:

- detention without any pre-arrest probable cause determination,
- conspiracy to commit sexual battery by officers under color of law,
- retaliatory deprivation of personal liberty,
- arbitrary harassment at Plaintiff's home without cause or lawful basis, and

- post-arrest misconduct and fabrications intended to cover up constitutional violations.

These allegations describe conduct that is not only unreasonable under the Fourth Amendment, but also conscience-shocking in the constitutional sense. The Fourteenth Amendment applies independently where officials act with "intent to injure in a way that is not justified by any legitimate law enforcement objective." *Lewis*, 523 U.S. at 849. Plaintiff has sufficiently plead such conduct.

**ii. Procedural Due Process**

Defendants also assert that Plaintiff has failed to identify a fundamental procedural flaw. This ignores Plaintiff's Monell allegations and the systemic procedural harms described.

Plaintiff alleges that IMPD operates under a de facto policy or custom of automatically endorsing the version of events offered by the calling party — without investigation, without neutral fact-finding, and without affording the accused citizen any procedural protections. This policy results in predictable violations: false imprisonment, unlawful detention, retaliatory arrest, and arbitrary searches.

Where a municipality maintains a policy that structurally denies due process before depriving a person of liberty, that policy violates the Fourteenth Amendment. *See Zinermon v. Burch*, 494 U.S. 113, 127 (1990). Plaintiff has expressly pleaded these systemic procedural defects. Dismissal is inappropriate.

Defendants argue that Plaintiff's procedural due process claims should be dismissed because he allegedly did not utilize state or municipal procedures to challenge the misconduct. This argument is meritless for multiple reasons.

- **Defendants fail to identify any actual procedures available to Plaintiff.**

The motion does not identify a single municipal or state-level procedure that could have remedied the alleged constitutional violations, aside from a general reference to state courts and the Indiana Tort Claims Act (ITCA). Simply asserting that Plaintiff "could have sued in state court" is insufficient to defeat a federal due process claim. Federal courts do not require exhaustion of state remedies where the remedy is either nonexistent, inadequate, or would not address the constitutional violation. See *Zinermon v. Burch*, 494 U.S. 113, 126–27 (1990) ("The adequacy of state remedies is irrelevant where the procedural deprivation occurs at the hands of state officials acting under color of law.").

- **The alleged misconduct was systemic and endorsed by municipal actors.**

Plaintiff alleges that IMPD employees acted pursuant to policies and customs that caused predictable deprivation of constitutional rights, including false arrest, unlawful detention, and sexual battery. These deprivations occurred **without any notice, hearing, or opportunity to be heard**. State court remedies or ITCA claims would not have provided a real opportunity to challenge the deprivation before it occurred, nor would they have prevented the damages suffered by Plaintiff.

- **Federal courts protect constitutional rights independent of state remedies.**

Procedural due process under the Fourteenth Amendment guarantees a meaningful opportunity to be heard **prior to deprivation of life, liberty, or property**, regardless of available state procedures. Plaintiff's inability or lack of need to pursue state remedies does not eliminate the constitutional violation.

**3. Plaintiff Has Adequately Pleaded Municipal Liability Under Monell**

Defendants attempt to dismiss Plaintiff's Monell claims by asserting that IMPD "is not an entity capable of being sued." This argument fails for three reasons.

**i. Municipal Police Departments in Indiana Have Been Sued Repeatedly in Federal Court**

The Southern District of Indiana has repeatedly adjudicated § 1983 claims against IMPD and its officers — including cases involving excessive force, unconstitutional seizures, police dog maulings, and wrongful arrest. Notably, in *Mancini v. City of Indianapolis*, No. 1:14-cv-00647 (S.D. Ind.), Judge Tanya Walton Pratt permitted suit to proceed involving an IMPD K-9 attack on a pregnant woman. The assertion that IMPD is wholly immune from suit is inconsistent with the court's own docket.

**ii. Monell Permits Suit Against a Municipality Treated as a "Person"**

Under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), municipalities are subject to liability as "persons" for constitutional violations caused by official policy or custom. Plaintiff alleges that IMPD officers acted pursuant to a pattern, practice, and custom of endorsing caller narratives, retaliating against citizens who challenge municipal actors, and conducting arbitrary detentions and invasive searches. These allegations satisfy the Monell pleading standard.

**iii. The "Fortville" Line of Cases Does Not Bar Plaintiff's Claim**

Defendants rely on *Sow v. Fortville Police Dept.*, 636 F.3d 293 (7th Cir. 2011), which held that certain police departments are non-suable arms of the municipality. But this does not bar a Monell claim; it merely directs that the proper municipal defendant must be named.

Plaintiff's complaint alleges unconstitutional policies and customs attributable to the City of Indianapolis through its police department. The substantive Monell claims remain viable.

**4. Plaintiff Has Adequately Pleaded Civil RICO Claims Under 18 U.S.C. §§ 1961–1964**

Defendants argue that Plaintiff's RICO claims fail because municipalities "cannot be sued under RICO" and that Plaintiff fails to allege cognizable damage to Plaintiff's business property and interest. Both assertions are incorrect at the motion-to-dismiss stage.

**i. Plaintiff Has Pleaded Injury to "Business or Property" Under § 1964(c)**

Plaintiff alleges injury to business or property including:

- lost employment opportunities,
- forced relocation costs,
- legal defense expenses arising from retaliatory prosecution,
- deprivation of earning capacity during unlawful detention, and
- long-term impairment of professional prospects.

The Ninth Circuit, in an en banc decision, held that loss of employment opportunities resulting from false imprisonment and wrongful prosecution constitutes injury to "business or property" under § 1964(c). *Diaz v. Gates*, 420 F.3d 897, 900–04 (9th Cir. 2005). Plaintiff's allegations parallel those recognized in the opinion. These property injuries are more than sufficient to satisfy the RICO standing requirement at the pleading stage.

**ii. Municipal Actors Can Constitute a RICO Enterprise When Acting Outside Legitimate Purpose**

While municipalities qua municipalities cannot be liable as RICO “persons” for treble damages, RICO does apply where individual officers, employees, or municipal agents form a distinct enterprise operating through racketeering activity.

Plaintiff alleges that IMPD officers operated in concert with IndyGo, IFD, and OCC as an enterprise whose coordinated actions inflicted multiple retaliatory arrests, assaults, unlawful confinements, and obstruction of justice. This enterprise is derived not from the municipality per se, but enabled and supported by the un-Constitutional policy or custom derived from the Monell “person”. This satisfies the statutory enterprise requirement.

**iii. Plaintiff Does Not Assert RICO Against IMPD as a Municipal Entity**

Defendants argue municipal immunity under *Lancaster* and *Genty,* but Plaintiff does not sue IMPD *as a RICO person*. Instead, Plaintiff is suing the IMPD Enterprise created by the *Monell Defendant IMPD “person”*. Plaintiff alleges that certain customs, practices, and policies within IMPD, as outlined in the amended complaint, constitute an enterprise distinct from the municipality itself, operating through coordinated acts of retaliation, unlawful detention, and obstruction of justice. They benefit from federal funding and other resources, which facilitate and enable the predictable violations of constitutional rights alleged in the amended complaint. This distinction defeats Defendants’ immunity argument.

KLEINFELD, Circuit Judge, with whom REINHARDT and BERZON, Circuit Judges, join, concurring:

"Here is the plain and express logic of the statute: (1) section 1964 establishes a civil cause of action for a violation of section 1962; (2) section 1962 uses a term of art defined in section 1961 to denote violations; (3) section 1961 expressly provides that various personal injuries, as well as other kinds of wrongdoing, constitute the misconduct giving rise to a cause of action. I see no way around this plain language of the statute. That is why I part ways from *Grogan* and *Doe*, the Seventh and Eleventh Circuit cases holding that personal injury claims cannot give rise to RICO standing. If they were right, then the words "murder" and "kidnapping" in the statute would have to be wrong, which is impossible. Our tools of statutory construction do not include an eraser." 420 F.3d 897 , 900 (Aug 16, 2005)

"Every action has damage of a collateral nature" reflects a foundational principle in both law and moral philosophy: no act of enforcement, deterrence, or justice occurs in isolation. In law, tort and RICO doctrines recognize that targeted remedies—whether disgorgement of illicit profits, injunctive relief, or criminal sanctions—produce foreseeable ancillary effects on third parties who are not the primary actors (*Palsgraf v. Long Island R.R.*, 248 N.Y. 339, 1928). In the present context, the collateral effects of removing the IMPD Enterprise's ill-gotten wealth may disrupt the broader societal "body" in which the enterprise is embedded, but such necessary pain is both anticipated and justified: the law measures success not by the absence of side effects, but by the rectification of systemic wrongdoing. Philosophically, this principle mirrors Stoic and Bodhisattvic reasoning: the removal of corruption, though painful to the surrounding system, is essential for the restoration of balance and the health of the whole.

**iv. Plaintiff's "Sovereign Franchise" Allegations Support Pattern and Purpose of Enterprise**

Plaintiff's allegations concerning damage to the civil franchise—including obstruction of federal judicial proceedings and perversion of the constitutional order—directly support the existence, structure, and purpose of the enterprise. These facts are properly considered when evaluating pattern, continuity, and motive under RICO. At its core, American citizenship is the most fundamental and valuable "business and property" in which every citizen participates; its value exceeds that of citizenship in other nations precisely because it guarantees liberty, due process, and constitutional protection. The deliberate corruption of municipal and state actors, executed through unconstitutional policies and acts, inflicts direct injury on this franchise, degrading its integrity and undermining the rights of both current citizens and future generations.

By attacking the civil service and perverting constitutional safeguards, the enterprise does not merely harm individuals—it strikes at the **sovereign foundation of American law and society itself**, transforming the franchise into a vessel of predictable injustice unless remedied.

**4. State Law Claims**

**A. Indiana Tort Claims Act (ITCA) Notice Argument**

Defendants assert that Plaintiff's state law claims must be dismissed for failure to file a timely tort claim notice as required by the Indiana Tort Claims Act (ITCA). This argument is legally inapplicable in this context.

First, the ITCA governs claims against public employees and governmental entities in state court, but does not preempt federal constitutional claims brought under § 1983 or claims

properly asserted under supplemental jurisdiction. Plaintiff's state law claims are asserted in federal court as supplemental claims pursuant to 28 U.S.C. § 1367, accompanying the federal constitutional claims already pleaded.

Second, there is no prerequisite to file a tort claims notice when alleging violations of federal constitutional rights. The federal court retains jurisdiction over claims for damages flowing from unlawful detention, assault, and other constitutional violations, even when state-law analogues exist. Accordingly, Defendants' assertion that failure to file an ITCA notice warrants dismissal is without merit.

**B. Private Right of Action Argument**

Defendants further argue that Plaintiff's state law claims must be dismissed because the statutes relied upon do not confer a private right of action. This argument mischaracterizes both the complaint and the authority permitting supplemental jurisdiction.

Plaintiff's state law claims are not dependent on independent statutory causes of action; rather, they are derivative of the same facts and harms underlying his federal claims. The Constitution provides the substantive foundation for Plaintiff's rights, and the state law claims supply additional measures of compensatory relief, particularly for economic and personal injuries such as unlawful detention, assault, and other tortious acts occurring within Indiana.

Federal courts have routinely exercised supplemental jurisdiction over state law claims arising from the same nucleus of operative facts as federal claims, consistent with Article III of the Constitution. See *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966). Plaintiff's state law claims flow directly from the constitutional violations, and the Indiana statutes

referenced are interpreted in this context to support damages consistent with Indiana tort law, including loss of liberty, physical injury, and other compensable harms.

Finally, Plaintiff's initial complaint was filed in forma pauperis as a pro se plaintiff. Such complaints are screened more rigorously under 28 U.S.C. § 1915(e)(2), yet Plaintiff's complaint passed screening, confirming that the claims were sufficiently pleaded to survive preliminary scrutiny. Defendants' argument that a private right of action is lacking therefore fails to support dismissal.

## CONCLUSION

Defendants' Motion to Dismiss asks this Court to disregard well-plead facts, misstates the governing legal standards, and attempts to collapse distinct constitutional, statutory, and RICO doctrines into an immunity that does not exist. At this stage, Plaintiff's allegations must be taken as true. When they are, they plausibly establish (1) violations of the First, Fourth, and Fourteenth Amendments; (2) Monell liability arising from unconstitutional policies, customs, and practices; (3) a cognizable RICO enterprise distinct from the municipal corporation; and (4) supplemental state-law claims properly before this Court under 28 U.S.C. § 1367.

Plaintiff does not sue the City of Indianapolis or IMPD as a RICO "person." Rather, he alleges the existence of the *IMPD Enterprise*—an association-in-fact formed by officers, agents, and inter-agency collaborators whose coordinated acts of kidnapping, unlawful detention, and obstruction of federal proceedings were enabled by the unconstitutional customs of the Monell defendant. This satisfies the distinctness requirement and defeats Defendants' immunity theory.

Defendants' procedural-due-process arguments fail because they identify no adequate state remedy, and none exists for the constitutional deprivations pleaded. Their state-law arguments fail because the Indiana Tort Claims Act does not apply to federal litigation, and this Court has already found the complaint sufficient at screening.

For these reasons, and for all additional reasons stated herein, Plaintiff respectfully requests that the Court DENY Defendants' Motion to Dismiss in its entirety and allow this action to proceed to discovery, where the full scope of the unconstitutional customs and enterprise conduct can be proven through evidence.

**Aaron Singer**
Pro Se Plaintiff

943-900-2245

aaron@amsinger.org

DATE: ___11/25/2025__

SIGNATURE:



CERTIFICATE OF SERVICE

I certify that a copy of this **PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS** and related exhibits have been sent (emailed) to:

Brian Coppinger: brian.coppinger2@indy.gov

Caitlin Wilkinson: Caitlin.Wilkinson2@indy.gov

Date: 11/25/2025